**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT ASHLAND**

**CRIMINAL ACTION NO. 09-5-DLB**

**UNITED STATES OF AMERICA**                                                **PLAINTIFF**

**VS.**                           **MEMORANDUM OPINION AND ORDER**

**GARY LYNN RUSSELL**                                                      **DEFENDANT**

*******************************

**Introduction**

This matter is before the Court upon Defendant Gary Lynn Russell's Motion to Suppress evidence obtained during a search of his property at 3236 Camelot Drive, Catlettsburg, Kentucky on March 3, 2008 (Doc. # 35).[1]  In his motion, Defendant alleges that the evidence seized pursuant to the search warrant must be suppressed because the executing officers did not provide him with the supporting affidavits and attachments at the time they provided him with a copy of the search warrant.  The United States having filed its Memorandum in Opposition to the motion (doc. #36), and Defendant having failed to file any reply, and the time for filing any reply having now expired, the motion is ripe for review. For the reasons that follow, the motion is **denied**.

---

[1] Co-Defendant Nicholas Russell has filed a Notice that he does not intend on challenging the search warrant because he acknowledges he lacks standing to challenge the search warrant (Doc. # 28).

**Factual Background**

On February 28, 2008, Magistrate Judge Edward B. Atkins signed a search warrant for the premises known as 3236 Camelot Drive, Catlettsburg, Boyd County, Kentucky 41129 - more particularly described as a gray two-story cape cod style home with an attached two-car garage. There is a gray mailbox near the street in front of the home with "3236" in gold numbers visible. (See Attachment A).[2]  That property is owned by Defendant Gary Russell.

The Application and Affidavit for the Search Warrant have been made part of the record as Exhibit A to the Government's response (Doc. # 36-3).  That application reveals that Bureau of Alcohol, Tobacco, and Firearms (BATF) Special Agent (SA) Ronald Sabotchick signed the affidavit in support of the search warrant before Magistrate Judge Atkins on February 28, 2008.  Upon consideration of the affidavit, the warrant was signed at 3:07 p.m.  Attached to the Application as Attachment B was a listing of the property to be seized.  That list included:

1.     Any and all firearms; and

2.     Any and all records or documents of firearm ownership and sales whether in paper or electronic format.

3.     Any and all cases for firearms, bearing firearms identification information, whether currently empty or full

_____

[2]  Attachment A gave the same description identified on the search warrant and provided specific directions on how to get to the premises to be searched:
    1.   3236 Camelot Drive, Catlettsburg, Boyd County, Kentucky 41129. This is more particularly described as a gray two-story Cape Cod style home with an attached two-car garage. There is a gray mailbox near the street in front of the home with "3236" in gold numbers visible.
    2.  From the intersection of Winchester Ave and US 60 in Ashland, go West on US 60 (13th Street) for 3.7 miles.  Turn Left on Boyscout Road.  Continue 0.4 miles on Boyscout Road to Skyline Drive, Turn Right onto Skyline Drive.  Continue 1.8 miles on Skyline Drive to Camelot Drive, Turn Left onto Camelot Drive.  Continue 0.2 miles on Camelot Drive to 3236 Camelot Drive on the Right.

4.      US Currency

5.      Any computers, digital organizers, or other media of electronic data storage. This warrant also authorizes the search of the memory of such items for evidence of gun transactions

6.      Indication of ownership for vehicles and residence

7.      Bank records and financial documents

8.      Any safes or locked storage compartments. This warrant also authorizes the search of the contents such items.

9.      A 2004 green Dodge Durango with Kentucky license plate 628 GVM and vehicle identification number ID4HB48N04F103039. The registered owner is Gary L. Russell, 3236 Camelot Drive, Catlettsburg, Kentucky 41129. This warrant also authorizes a search of this vehicle for the items listed in this Attachment.

(Doc. # 36-3 at p. 11).

At the same time the search warrant application was presented to Magistrate Judge Atkins for his consideration, the Government filed a motion to seal the search warrant, application and affidavit, any attachments, the motion and order. The record reflects Magistrate Judge Atkins signed the Order sealing the search warrant, application and affidavit, any attachments, the motion to seal and sealing order. Thus, at the time the warrant was executed on March 3, 2008, all documentation in support of the search warrant had been filed under seal.

On March 3, 2008 at approximately 9:00 a.m., SA Sabotchick and other law enforcement officers executed the search warrant. Although there is no specific incorporation by reference statement in the warrant itself, the warrant does specifically reference SA Sabotchick's affidavit and the two attachments. Additionally, the two attachments are affixed to the warrant itself. *See* Doc. # 36-3 at p. 10-11.

3

Notwithstanding the affixing of these attachments to the warrant signed by Magistrate Judge Atkins, it is undisputed that when Defendant Gary Russell was presented with the search warrant, neither the supporting affidavit nor the two attachments (A or B) were provided to him.  It is this alleged error that Defendant relies upon in his current motion to suppress.

After the officers were finished executing the search warrant, Defendant Gary Russell was provided with a copy of the complete inventory of the items seized pursuant to the warrant.  This inventory consisted of eleven pages of an evidence control log (and a one page addendum), a copy of which is contained in the record as an exhibit to Defendant's suppression motion and the Government's response (Docs. # 35-3, 36-3 at p. 13-25).

**<u>Analysis</u>**

Defendant attacks the constitutionality of the March 3, 2008 search of his property on two grounds.  First, he claims that the search warrant lacks specificity regarding the items to be seized because Attachment B was not affixed to the warrant he was provided at the time of its execution.  Second, he argues that the search warrant was not properly executed because the officers failed to provide him with the supporting affidavit or attachments.[3]  Each argument will be addressed in turn.

### A.   The search warrant application described the property to be seized with sufficient particularity to survive constitutional scrutiny.

The Fourth Amendment states that "no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be

---

[3] Defendant does not challenge the search warrant on probable cause grounds.

4

searched, and the persons or things to be seized." U.S. Const. amend. IV.  "The purpose of this particularity requirement is to prevent the use of general warrants authorizing wide-ranging rummaging searches in violation of the Constitution's proscription against unreasonable searches and seizures." *United States v. Logan*, 250 F.3d 350, 364-65 (6th Cir. 2001).  The particularity required in any given warrant depends on the circumstances of each particular case.  *Id.* at 365; *see also United States v. Blair*, 214 F.3d 690, 696 (6th Cir. 2000) ("[T]he degree of specificity in a warrant must be flexible, depending upon the type of items to be seized and the crime involved."); *United States v. Henson*, 848 F.2d 1374, 1383 (6th Cir. 1988) (finding that "the degree of specificity required is flexible and will vary depending on the crime involved and the types of items sought").  A description contained in a warrant is sufficiently particular if it is as specific as the circumstances and the nature of the alleged crime permit.  *Logan*, 250 F.3d at 365.

       In this case, the warrant referenced an Attachment B in the section which describes the items to be seized.  Attachment B listed nine (9) separate categories of items whose seizure was authorized by the search warrant.  Although Defendant may not have been provided with a copy of Attachment B at the time the warrant was being executed, it was affixed to the search warrant itself.  Defendant argues that this error mandates suppression of all evidence seized pursuant the warrant.  For the reasons that follow, the Court disagrees.

       The Supreme Court's holding in *Massachusetts v. Sheppard,* 468 U.S. 981 (1984) is instructive in resolving Defendant's suppression motion.  In *Sheppard,* a police detective investigating a homicide received information that led him to seek a warrant authorizing the search of the defendant's home.  In support of the warrant, the detective prepared an

affidavit describing the specific items to be seized.  Because it was a weekend, the only warrant form the police could find was one ordinarily used for drug searches.   Realizing that the warrant form had to be modified before it could be used to authorize the search requested in the affidavit, the investigating detective deleted the phrase "controlled substance" from the subtitle of the form.  However, neither the detective nor the judge who issued the warrant deleted the reference to "controlled substances" in the portion of the form "that, when signed, would constitute the warrant itself."  *Id.* at 985.  Nor was the warrant form ever altered so as to incorporate the affidavit.  *Id.* at 986.  After the judge signed the warrant, the detective who had prepared the affidavit left with both the warrant and the affidavit and, accompanied by other officers, executed the warrant; the search was limited to the items listed in the affidavit.  *Id.* at 986-87.  The seized items were introduced at trial and Sheppard was ultimately found guilty of murder.

The Supreme Court held that federal law did not require suppression of the seized evidence, because the officers believed that the warrant authorized the search they conducted, and, "there was an objectively reasonable basis for the officers' mistaken belief."  *Id.* at 988.  Specifically, the Court noted that the investigating detective had taken "every step that could reasonably be expected of him":  he had prepared a particularized affidavit, and he had presented the affidavit to a neutral judge, making it clear that the warrant form had to be modified;  he was then informed by the judge that the search would be authorized and that the necessary changes in the warrant would be made.  *Id.* at 989.  At that point, the Court reasoned, "a reasonable police officer would have concluded, as [the detective] did, that the warrant authorized a search for the materials outlined in the affidavit"; therefore, suppression would not "serve the deterrent function that the

6

exclusionary rule was designed to achieve." *Id.* at 989.

Although *Sheppard* is certainly not on all fours with the facts of this case, it's holding is instructive in this matter. Here, SA Sabotchick was involved in lengthy investigation concerning Defendant's alleged illegal activities which ultimately led him to seek a warrant authorizing a search of Defendant's Camelot Drive property. As in *Sheppard,* the affidavit prepared in support of the search warrant specified in great detail the items to be seized, the investigating officers presented the affidavit to a neutral magistrate judge, the search was executed by the same agent who had prepared the affidavit, and the scope of the search was limited to the items listed in Attachment B. In this case, there have been no allegations that SA Sabotchick exceeded the scope of the search warrant by seizing items that were not specified in Attachment B. Given the similarities in all material respects of the situation here to that in *Sheppard,* the Court concludes that SA Sabotchick had an "objectively reasonable basis" for any allegedly mistaken belief that their search of the Camelot Drive property was authorized by a valid warrant.

The D.C. Circuit Court opinion of *United States v. Anderson*, 851 F.2d 384, 388-89 (D.C.Cir. 1988) is also instructive. In *Anderson*, an affidavit prepared in support of a state search warrant specified in detail the items to be seized, but the affidavit was not attached to or incorporated by the warrant. Relying upon *Sheppard*, the D.C. Circuit upheld the search even though the warrant had not incorporated the affidavit which described the items to be seized with particularity. As was the case herein, the officers in *Anderson* acted reasonably in executing the warrant because the investigating officers presented the affidavit to a neutral judge, the search was executed by the same officers who had prepared the affidavits, and the scope of the search was limited to the items listed in the

affidavits.  The same can be said for SA Sabotchick in this case.

Simply put, the purpose behind the exclusionary rule would not be served if the evidence seized pursuant to the challenged search warrant herein was suppressed.  Not only was Attachment B affixed to the Application and Affidavit for Search Warrant, it was also affixed to the Search Warrant itself.  Additionally, there is no evidence that SA Sabotchick or anyone else exceeded the scope of the warrant by seizing items that were not set forth in Attachment B.  Nor was there any chance that SA Sabotchick was not aware of the scope of the warrant since he was the affiant who had prepared Attachment B.  Under these circumstances, Defendant's particularity challenge fails.

**B.     The failure to provide Defendant with a copy of Attachment B during the execution of the search warrant does not mandate suppression of the evidence seized pursuant to the warrant.**

In support of his argument that the items to be seized must be identified in the warrant and not the supporting documentation, Defendant relies upon the Supreme Court's decision in *Groh v. Ramirez*, 540 U.S. 551, 557 (2004).  According to Defendant, because the affidavit and attachments were not provided to him at the time the search warrant was executed, the evidence must be suppressed.  As explained below, Defendant's reliance on *Groh* for that proposition is misplaced.

Although not cited by Defendant, Rule 41(f)(1)(C) is instructive in resolving this aspect of Defendant's motion.  Rule 41(f)(1)(C) provides:

**(C) Receipt.**  The officer executing the warrant must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken or leave a copy of the warrant and receipt at the place where the officer took the property.

8

In this case, it is undisputed that SA Sabotchick provided Defendant with a copy of the search warrant and an inventory of all items that were seized pursuant to the warrant.  In doing so, he complied with the requirements of Rule 41(f)(1)(C).  Simply put, Rule 41 did not require SA Sabotchick to provide Defendant with anything else during the execution of the search warrant.

Defendant's arguments that alleged errors during execution of the search warrant require suppression are even more tenuous in light of recent Sixth Circuit and Supreme Court jurisprudence.  In *Baranski v. Fifteen Unknown Agents of the Bureau of Alcohol, Tobacco and Firearms*, 452 F.3d 433, 443 (6th Cir. 2006), an *en banc* Sixth Circuit stated that the Supreme Court's decision in *Groh* provides little support for holding that the failure to produce a warrant at the outset of a search makes the search violative of the Fourth Amendment.  In fact, the Supreme Court in *Groh* acknowledged that the Fourth Amendment does not compel officers to present a warrant before executing a search.  540 U.S. at 562, n. 5 ("[N]either the Fourth Amendment nor Rule 41 of the Federal Rules of Criminal Procedure requires the executing officer to serve the warrant on the owner before commencing the search.").  Moreover, the Supreme Court's recent decision in *United States v. Grubbs*, 547 U.S. 90 (2006) left little doubt that neither the Fourth Amendment nor Rule 41 imposes a requirement that the executing officers present the property owner with a copy of the search warrant before conducting his search.

Another analogous case to the instant matter is *Frisby v. United States*, 79 F.3d 29 (6th Cir. 1996).  In *Frisby*, an IRS special agent obtained a search warrant for the plaintiff's home and office which "incorporated by reference an 'Attachment A,' which specifically enumerated the items to be seized."  79 F.3d at 30.  Although the law enforcement agents

9

served plaintiff with a copy of the warrant at the time of search, they inadvertently failed to provide plaintiff with a copy of Attachment A.  However, after completing the search and before leaving the premises, the agents provided plaintiff with a complete inventory of the items they had seized.  *Id.* at 31.

In considering a very similar challenge to that lodged by Defendant herein, the *Frisby* court rejected the plaintiff's argument that the search and seizure were unlawful pursuant to the Fourth Amendment stating:

> the search and seizure took place pursuant to a valid warrant and there is no allegation that the failure to serve plaintiff with a copy of Attachment A was either intentional or deliberate.  Under these circumstances, the search and seizure was lawful under the Fourth Amendment.

*Id.* at 32.  Similarly in this case, although the search warrant may have lacked the "incorporation by reference" language contained in the *Frisby* warrant, the search of Mr. Russell's residence took place pursuant to a valid search warrant, and the search did not exceed the scope of the warrant.  Additionally, there is absolutely no evidence that the executing officers' failure, if any, to leave a copy of "Attachment B" which described the evidence to be seized, was intentional or deliberate.[4]

Another factually analogous case is the Sixth Circuit's unpublished decision in *United States v. Pritchett*, 40 Fed.Appx. 901, 907 (6th Cir. 2002), which is virtually on all fours with the instant matter.  In *Pritchett*, the Sixth Circuit concluded that where the warrant referred the reader to "attachment B" in the description of things to be seized, but

---

[4] Although Defendant also takes issue with the officers' failure to present him with a copy of the supporting affidavit for the search warrant, because the issuing magistrate judge had filed the application in support of the search warrant (and the affidavit) under seal, that argument is completely meritless.

the police failed to bring the attachment with them at the time of the search, the search was still valid.  As was the case herein, the attachment had a sufficient description of the objects at issue but was not with the agents when they conducted their search.  And, as here, the attachment was appended to the warrant application at the time of issuance and was subsequently placed under seal.  The *Pritchett* court held that because the affiant led the search, the agents orally communicated to the occupant what they were looking for before they performed their search and the agents provided him with a receipt afterwards, "[t]he Fourth Amendment's requirements were satisfied." *Id., see also United States v. McKenzie*, 446 F.2d 949, 954 (6th Cir. 1971) ("Although important, the procedures required for execution and return of a search warrant, contained in Rule 41(d) of the Federal Rules of Criminal Procedure, are ministerial. Absent a showing of prejudice, irregularities in these procedures do not void an otherwise valid search.")

In this case, Defendant Gary Russell has not established that the officers' failure to provide him with a copy of "Attachment B" during execution of the search warrant was either done intentionally or in bad faith, or that he has been prejudiced as a result. Moreover, he has failed to show how he was prejudiced in any way by failing to provide him "Attachment B" during the execution of the search warrant.  As was the case in *Pritchett*, Attachment B was appended to the warrant and application at the time of its issuance and was subsequently placed under seal by the issuing magistrate judge.  Moreover, because the affiant led the search of Defendant's property, as did the affiant in *Pritchett*, there was no Fourth Amendment violation during execution of the search warrant.

**Conclusion**

Accordingly, **IT IS ORDERED** that Defendant's Motion to Suppress evidence (Doc. # 35) be, and is hereby **DENIED**.

This 16th day of April, 2009.



Signed By:
_David L. Bunning_

United States District Judge

G:\DATA\ORDERS\AshCrim\09-5-MOO-Denying-Motion-Suppress.wpd